Good morning. I'd like to focus, if I may, on the physical capacities evaluation. That seems to be the cornerstone of the ALJ's credibility finding here. And what I'd like to point out about that is that during a physical capacities evaluation, there are certain indications of whether or not the claimant or the participant in this evaluation is putting forth maximum effort. And in this particular evaluation, there were 13 different indices of whether or not the person was putting forth maximum effort and whether the testing was valid. Twelve of those were valid. One of them was not. The one that was not is a grip thing. You take this dynamometer and you squeeze it and see how strong your grip is. And normally, a person will have what they call a bell curve on that. And you start out, and you're not quite up to strength, so you start out low. Then the next time, you squeeze a little harder, a little harder, a little harder. And it goes up, and then you start getting tired, and it goes back down. And everybody will do the same thing. And if you don't do that right, if it doesn't produce a bell curve, then they suspect that you weren't really trying your best. Well, in this case, he failed that test. However, the record shows that shortly prior to that physical capacities evaluation, he had injured his wrist. And I believe that given that that's the test that was invalid and that his wrist was injured and all the other 12 indications of validity passed. How did he injure his wrist? I believe it was during one of these absolutely numerous accidents that he was in. This guy has been in more automobile accidents. We probably should submit this to the Guinness Book of World Records. And he had been in one shortly prior to this evaluation. And I think that once that is put into context, the whole thing falls into place, because that was the basis for determining that he hadn't given his best effort during that evaluation, and he had an injured wrist. Of course he flunked the bell curve on that. So what you come up with then is you accept that he really did give his best effort during the physical capacities evaluation, and you look at the evidence of what happened after that. The evaluation lasted for two-and-a-half hours, during which time he performed activities at a sedentary work level. Subsequently, he was incapacitated by pain for several days, which demonstrates to me that he is incapable of sustaining that same type of activity over the course of a full-time, eight-hour-a-day, five-day-a-week work schedule. When you look at it in that sense, I think he is credible. Once he is credible, Dr. Tomaszewski, who I will concede relied in part on the claimant's complaints informing his opinion, I believe Tomaszewski also relied on the objective evidence, the claimant's response to treatment, and so forth, all appropriate medical factors. But even if you assume that the claimant did not put forth his best effort during the PCE, physical capacities evaluation, the evaluators of the PCE rejected that he was as limited as he said, and they said, well, you know, we are projecting that he will have the following limits. And among those limits, which ALJ simply ignored, were that he could lift only occasionally at any weight and that he could reach only occasionally. Now, those limitations, which were simply ignored by the ALJ, were based on the evaluator's conclusion that the test results had been invalid, and therefore they were not accepting the claimant's assertion of limitation. They were projecting what his real limitations were. One other point I would like to bring up is the appeals counsel evidence. At the appeals counsel level, in accordance with the regulations, which allow you to submit additional evidence to the appeals counsel without good cause for doing so, the claimant submitted a report from his treating physician, Dr. Haddad. Now, opposing counsel has argued that when you submit additional evidence to the appeals counsel, there is a good cause requirement for having not submitted that evidence earlier. It's my position that there is no good cause. If you compare the regulation, there is no good cause requirement in the regulation. Where the good cause requirement comes in is in 42 U.S.C. section 405G, which says that if you wait after the appeals counsel level and submit evidence directly to the Federal Court or to the Ninth Circuit seeking a sentence six remand for further proceedings, then you have to have good cause. But at the appeals counsel level, there's no good cause requirement. Al J. Madden cites various reasons for turning down your client. Is there anything factually inaccurate about what Al J. Madden says about this? The attendance in the school, all the children, the fishing, the rowing the boat. Is there anything factually inaccurate about this scenario that he describes in deciding your client wasn't disabled for the period in question? Yes. There is very much factually inaccurate. First of all, it's factually inaccurate because it's factually incomplete. Yes, he did severely injure himself rowing a boat in a windstorm. He was in a rowboat with his kids. They were doing the rowing. How old were the kids? I believe the oldest one was 12. He's out in a rowboat with kids on a lake? Yes. They were doing the rowing. I believe his girlfriend was also with them. He did the rowing at some point in time. A windstorm came up, and they got blown off course, and he had to start rowing to save them. As a result of that, his pain was so severely exacerbated that shortly thereafter he wound up having fusion surgery of his spine. I don't think that his poor judgment there is an indication of capacity. Did he participate in a four-day-a-week, full-day class and study schedule and full-time parenting activities at the same time? With very numerous accommodations in that college schedule, he did participate, Your Honor. I would also note that the record shows that his children, who were by this time about 9, 10, 12 years old, were caring more for him than he was caring for them in a physical sense. The kids were doing the chores. He may have been watching them, as a parent does. But the college attendance, he had numerous accommodations, none of which would have been available in an unsheltered work environment. And so I don't think those activities are dispositive here. If you look at cases from this court, like the Reddick case, the Vertigan case, it's very clear that those types of part-time activities performed with numerous accommodations are not indicative of the ability to perform sustained full-time work without accommodations. I would like to say that the test is the ordinary administrative law substantial evidence test. Well, there is also legal error, Your Honor. The problem that I have is the ALJ has some indication in his doctor's reports that whatever reports Mr. Kutz is making to the doctors are not adequately supported by his physical condition, that they're exaggerated. So the ALJ is trying to figure out why, and he takes the full-time attendance at class and so forth as reason to think doctors are right, the man's exaggerating. Now, there are good responses, and it may be that the ALJ is wrong, but we don't get to substitute our judgment, and I don't see why it's not good enough under the substantial evidence test. Well, Your Honor, this brings up a tricky question in the standards of review. First of all, you are absolutely correct. We do have the substantial evidence standard of review, but when rejecting a claimant's testimony, now, you might say substantial evidence is a low standard. Clear and convincing reasons, in contrast, is a very high standard. So substantial evidence applies down here, but when you reject a claimant's testimony, in essence, accuse the claimant of trying to establish entitlement to benefits illicitly. When you reject that testimony, the standard there is clear and convincing reasons, and I think I've demonstrated with my factual discussions in my briefs. I wonder if that is revived. There was a case that wasn't cited in either side's briefs, but I happen to recall it because we had a little go-around in our court on whether to go on BAC and so forth. We had developed some case law that made it very hard for an ALJ to reject the treating physician's opinion, and I think it also made it hard to reject the claimant's testimony, but I particularly remember treating physician's opinion. I'm thinking it starts with an R, and then the Supreme Court reversed it, and then it came back down. That case went off on a memo dispo when it came back down, and then I wrote an opinion that I published that said the Supreme Court took away this big advantage that the treating physician has. I'm thinking it's an R, regular or something like that. Do you remember? It doesn't strike a bell or ring a bell. There are really very, very few Supreme Court Social Security cases. I'll check on it later. Most of them from the Ninth Circuit, though. Yeah, usually they reign us in. Well, I have a couple of them. I know. But hopefully not this one. Thank you, counsel. We'll hear from the other side. Good morning, Your Honors. My name is Tom Ellsberry. I'm here on behalf of the Commissioner of Social Security. Is the case Regenitor? Pardon? The case that you were trying to recall, is it possibly Regenitor? It doesn't ring a bell. Okay. Good, because I'm not prepared to discuss that case today. Well, then discuss this one. Okay. Clearly, this comes down to the credibility assessment that the ALJ performed in this case. I think this is very clear. Standards have been established, clear and convincing reasons. When there's an objective evidence of an underlying medical impairment, supporting the possibility of the subjective limitations, the ALJ must, if he's going to reject those subjective complaints, he must cite clear and convincing reasons supported by substantial evidence, absent evidence of malingering. Now, our appellant's counsel has argued that there was no finding of affirmative evidence of malingering, no official finding by the ALJ of malingering. There is no such requirement. The standard is clear and convincing reasons, absent evidence of malingering. It's self-defining. If there's evidence of malingering, those are your clear and convincing reasons, which is, in fact, the case we have here. The ALJ cited. What is the statement of law again? Absent evidence of affirmative evidence of malingering, the ALJ must cite clear and convincing reasons supported by substantial evidence for rejecting the subjective testimony of the appellant. Got it. And the ALJ has done that here under both standards. The affirmative evidence of malingering standard is quite easy. By discussing the evidence of malingering, he meets the standard, and he's done that in this case here. But he's gone beyond that to discuss additional evidence that cumulatively also meets the clear and convincing standard. So regardless of whether there was a ‑‑ So the clear and convincing reasons are that his behavior and the evidence of his lifestyle is inconsistent with his claim of disability, and it's supported by substantial evidence, which is the information that I was talking about with Mr. Wilborn. Is that your case? That's one part of it. Another part of it is his reporting to his treating physician and the treating physician's response, where he specifically requested the treating physician, Dr. Murray, to find him disabled from work, which Dr. Murray specifically stated he found inappropriate and would not do. Even more importantly, and this is specifically to the malingering issue, was the PCE, the physical capacities evaluation. I'm, I guess, a little thrown off by opponents' counsel's representation of it. The primary element of this was not the wrist and actually had nothing to do with their finding of invalidity, nor are there 13 validity tests within this PCE, this capacity evaluation. There are tests of range of motion. The two orthopedic counselors who evaluated him in this session specifically stated it was his range of motion that was invalid, and that was supported by the straight leg raising validity criteria not being met. It's a criteria that's established, because these subjective limitations are hard to demonstrate. It's a validity test that's established to explore the concept of malingering. As I cited in my brief, the social security disability test specifically lists several different variations of validity tests to determine whether the plaintiff is malingering, and if he fails them, if the validity is invalid, then it strongly suggests or is evidence of malingering. That's what the orthopedic counselors did, or evaluators did in this case. It's a clear and convincing reason to discredit the subjective reporting, and it's clearly evidence of malingering, affirmative evidence of malingering. Further, in addition to that, there was also the excessive reporting of pain that the orthopedic evaluators talked about, and the ALJ considered that as well. During the testing, he reported a pain level of 9, which is just one shy of needing to go to the emergency room. They did a pulse check, and his pulse was normal. It was not indicative of intense pain or distress, physical distress. And I'm not sure of the pronunciation, a tachycardia test as well, which also indicated lack of acute distress. The ALJ further relied on, as you already spoke of, a study college course load. Important here is that he did not find that his ability to do this course load translated into an ability to do work. What he found was it tainted his credibility because he was asserting a complete inability to perform any substantial gainful activity at all, despite the fact of his ability to maintain this heavy course load, to maintain his responsibilities as a parent. In one period of time, he, in fact, reports to one of his doctors that he was self-employed and was not losing any work as a result of one of the car accidents he was in. Despite some impairment or some limitation, he was still able to perform his work during that period of time. I have nothing more to say on that. I guess to me it so clearly meets the clear and convincing reasons standard, and were we even required to go there. But with the affirmative evidence malingering, I think the ALJ has satisfied his burden of providing substantial evidence to reject the credibility of the claimant. Thank you, counsel. We'll let Mr. Wilburn respond. I do not believe there was affirmative evidence malingering. I would refer the court to excerpts, page 131. Those are the numbers at the bottom of the page. Inconsistencies. Top of the page. Five-position grip. That's the test I talked about, the JMR dynamometer. And they say it gave an abnormal curve, indicating a lack of maximal effort with grip strength testing. That's exactly what I told the court. I did not mislead the court there. As for the absence of tachycardia, they said that he was in level nine pain, according to him, and his pulse was only 82. Well, I suspect that if any of us were to check our pulses right now, as we engage in sedentary activities, we would find our pulses in the 60s. Not mine. I know mine normally is in the 60s. What about Dr. Murray? The counsel brought up Dr. Murray in your client's allegedly inappropriate attempt to get him to say he was unable to work, disabled. Well, Dr. Murray didn't say that the client wasn't disabled. He said if he wants to apply for Social Security, that's fine, but I'm not going to, quote, make him disabled by writing a letter that he is disabled. He thought it was premature to give up. That was back, I believe, in 1997. That was prior to multiple additional accidents and falls and injuries. Why had your client gone to Dr. Murray? Why did he go to Dr. Murray? Oh, Dr. Murray was at that time the treating physician. I would also point out that Dr. Murray was missing things. He was saying that the client was fine, and he wrote this rather sarcastic almost letter to Dr. Pertzer referring for a second opinion and basically saying this is a chronic pain whiner. Well, Dr. Pertzer did some testing and discovered that this guy had some pretty severe pathology in his cervical spine, and he wound up having a multiple-level fusion in his cervical spine with impinged nerves, or at least one impinged nerve root in the cervical spine. So, you know, I'm not so sure that Dr. Murray's skepticism is the best focus here. I think that if we look at the objective evidence. Is that something for us to review? I think that. Whether Dr. Murray's skepticism is soundly based or not? I'm not. I'm just wanting to know where that comes in. You are. I think it is because the Ninth Circuit case law says that in reviewing these records, let's see which case it is. I can't remember the site. Multiple cases say this, but the case law is that when reviewing the ALJ's decision to determine whether it's supported by substantial evidence, the court must look not only at the evidence which supports the ALJ's decision, but the evidence which detracts from the conclusion which the ALJ reached. And I think that, first of all, it's a one-two step there. First of all, Dr. Murray was missing things when he was being skeptical. Second of all, and three steps, actually. Second of all, he said that very early in the course of this entire case. And third of all, he didn't say that the claimant wasn't disabled. He simply was reluctant to certify him as disabled at this young age because he thought it would inappropriately handicap any chances he might have of becoming rehabilitated. Mr. Wilmer, I assume you handled these things at the initial levels, not just only on appeal. Is that right? Not anymore, Your Honor. I don't do hearings because there are lots of attorneys who are happy to do hearings and very few who want to do court appeals. And so I have limited my practice in the last two and a half or three years. Do you have an anecdotal sense of how many people prevail in their attempts at the hearing level and how many people do not? Not anecdotal, but I can tell you that the agency maintains statistics on it, and it's approximately high 50s in percentage. So it's 50-50 now. It's a little better than 50. Like 58, I think. 58. All right, thank you, counsel. This case has just argued as ordered and submitted, and we'll call the next one Merrill v. Barnhart.
judges: Trott, Kleinfeld, Pollak